# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 2275 | DATE | OCTOBER 29, 2001 |
| CASE TITLE | TIMOTHY TATE v. MARK PIERSON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Petitioner's motion for leave to file a reply to respondent's reply is granted. Respondent's motion to dismiss [15-1] is granted. The Clerk of the Court is directed to enter judgment in favor of respondent and against petitioner denying the petition for writ of habeas corpus. If petitioner wishes to appeal this order, he must file a Notice of Appeal to the U.S. Court of Appeals for the Seventh Circuit with the Clerk of the Court, U.S. District Court for the Northern District of Illinois, 219 S. Dearborn St., 20th Floor, Chicago, IL 60604, within 30 days of the entry of the judgment in this case. Any notice of appeal should also be accompanied by a request for a certificate of appealability, including a statement as to why a certificate should issue. See 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | 2 |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | OCT 30 2001 |
| | Docketing to mail notices. | | date docketed |
| ✓ | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| | | FILED FOR DOCKETING  01 OCT 29 PM 5: 25 | OCT. 29, 2001 |
| | | | date mailed notice |
| cw | courtroom deputy's initials | | mqm |
| | | Date/time received in central Clerk's Office | mailing initials |

Document Number 24

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TIMOTHY TATE,                          )
                                       )
                    Petitioner,        )
                                       )
        v.                             )      No. 01 C 2275
                                       )
MARK PIERSON,                          )
                                       )
                    Respondent.        )

DOCKETED

OCT 3 0 2001

## MEMORANDUM OPINION AND ORDER

In 1994, following a jury trial in the Circuit Court of
Cook County, Illinois, Timothy Tate was found guilty of first
degree murder. The murder occurred in July 1991, when Tate was
15 years old. Stanley Sellers, who had been with Tate and two
others at the time of the murder, testified that Tate was the one
who shot the victim. Tate was tried as an adult and sentenced to
39 years' incarceration. After exhausting his state court
remedies, Tate, proceeding pro se, filed his present federal
petition for a writ of habeas corpus. Respondent moves to
dismiss on the ground that the petition is untimely.[1] See 28
U.S.C. § 2244(d).

---

[1]Petitioner's motion for leave to file a reply to
respondent's reply will be granted and that brief has been
considered.

Following his conviction and sentencing, Tate pursued a direct appeal before the Illinois Appellate Court. On direct appeal, Tate was represented by the Public Defender. He argued that the court should have given an accomplice witness instruction regarding Sellers' testimony and that the sentence was excessive in light of his age and background. On February 20, 1996, the Illinois Appellate Court affirmed the conviction and sentence.[2] Tate did not timely seek leave to appeal to the Illinois Supreme Court. Instead, more than three years later, on November 29, 1999, he moved to file a late petition for leave to appeal. On February 1, 2000, that motion was denied.

During the meantime, Tate was pursuing other avenues of relief. On May 4, 1995, while his direct appeal was still pending before the Illinois Appellate Court, Tate filed a pro se petition for post-conviction relief in the Circuit Court. In that petition, Tate raised issues concerning (a) trial counsel's alleged ineffective assistance in failing to present three witnesses who would have testified that Sellers admitted he was the one who actually shot the victim; (b) prosecutorial misconduct related to Sellers' testimony; and (c) failure of the court to disqualify a juror who lived near the shooting and did

---

[2]This unpublished order of the Illinois Appellate Court is provided as Exhibit B to respondent's answer to the habeas corpus petition and will hereinafter be referred to as "Tate I."

not want to participate in the case and related ineffective assistance of appellate counsel.  An affidavit from Sellers was attached to the petition.  On July 12, 1995, the trial court summarily dismissed the post-conviction petition on the grounds that it was without merit and frivolous.[3]

Tate was represented by the Public Defender on appeal, but the Public Defender moved to withdraw on the ground that there were no appealable issues.  See generally Pennsylvania v. Finley, 481 U.S. 551 (1987); Anders v. California, 386 U.S. 738 (1967); Wilkinson v. Cowan, 231 F.3d 347 (7th Cir. 2000), cert. denied, 121 S. Ct. 2549 (2001).  In a two-page brief containing no elaboration, cf. Wilkinson, 231 F.3d at 349, the Public Defender moved to withdraw on the ground that "[t]he petition fails to allege any facts that give rise to a claim of constitutional deprivation.  Mere conclusory allegations, unsupported by affidavits, are insufficient to warrant further proceedings."  On May 7, 1996, stating that it had carefully reviewed the record and briefs, the Illinois Appellate Court granted the motion to withdraw and affirmed the dismissal of the petition.[4]  The Appellate Court expressly addressed the merits of

---

[3]The trial court's statement in court incorrectly refers to Tate having pleaded guilty.

[4]This unpublished order of the Illinois Appellate Court is provided as Exhibit E to respondent's answer to the habeas corpus petition and will hereinafter be referred to as "Tate II."

the claims related to Sellers being the triggerman and concluded
that there was not a reasonable probability of affecting the
outcome.  As to the other issues raised, it was summarily stated
that they were "without merit."  Tate did not petition the
Illinois Supreme Court for leave to appeal.

On September 10, 1999, Tate, proceeding pro se, filed a
second post-conviction petition.[5]  On September 23, 1999, the
trial court denied the petition on the ground that second
petitions are not permitted.  Tate appealed and the Public
Defender was again appointed to represent him.  The Public
Defender again moved to withdraw, stating the following:

> It is clear that Tate's Petition is the
> "second" one recorded; it is not merely an
> amended version of the original.  The Post
> Conviction Act contemplates the filing of only
> one Post Conviction Petition.  People v.
> Caballero (1997), 179 Ill. 2d 205, 688 N.E.2d
> 658.  See also, People v. Flores (1992), 153
> Ill. 2d 264, 606 N.E.2d 1078, People v. Macky
> (1992), 229 Ill. App. 3d 784, 595 N.E.2d 133.
> Any claim of substantial denial of constitutional
> rights not raised in the original is waived.
> (See People v. Free (1988), 122 Ill. 2d 375, 522
> N.E.2d 1188.
> Counsel can find no manifest error in the
> judge's finding that the Petition (being the
> "second" is barred by statute, and therefore
> seeks to withdraw.  Pennsylvania v. Finley
> (1987), 481 U.S. 551.

---

[5]A copy of the second post-conviction petition has not
been provided, but it apparently raises the issues contained in
the federal habeas corpus petition that were not raised on direct
appeal or in the first post-conviction petition.  It may also
repeat some of the issues contained in the direct appeal and
first post-conviction petition.

On November 16, 2000, the Illinois Appellate Court granted the motion to withdraw and affirmed the denial of relief[6] stating: "We have carefully reviewed the record in this case, defendant's responses and the aforesaid brief in compliance with the mandate of _Pennsylvania v. Finley_ and find no issues of arguable merit. Therefore, the motion of the public defender for leave to withdraw as counsel is allowed and the judgment of the circuit court is affirmed." _Tate III_, at 3. Tate filed a _pro se_ petition for leave to appeal to the Illinois Supreme Court which was denied on January 29, 2001.

On April 2, 2001, Tate filed his federal habeas corpus petition containing the following issues: (1) failure to give the accomplice witness instruction; (2) the excessive length of the sentence; (3) ineffective assistance of trial counsel in failing to interview and call the witnesses to whom Sellers had admitted being the triggerman; (4) prosecutorial misconduct in using perjured testimony and withholding evidence; (5) ineffective assistance of appellate counsel for not raising the juror issue on appeal; (6) ineffective assistance of trial

---

[6]This unpublished order of the Illinois Appellate Court is provided as Exhibit G to respondent's answer to the habeas corpus petition and will hereinafter be referred to as "_Tate III_."

counsel in failing to interview and call Timothy Monltson[7] who could testify that the triggerman was not Tate; (7) refusal to grant trial counsel's motion to withdraw based on a conflict of interest; (8) ineffective assistance of trial counsel in failing to adequately prepare and present a motion to suppress Tate's confession based on alleged torture and coercion by police officers; (9) ineffective assistance of trial counsel in failing to interview and present witnesses to corroborate the alleged torture and coercion; (10) ineffective assistance of appellate counsel on direct appeal for failing to raise the ineffective assistance of trial counsel; and (11) denial of his first post-conviction petition having been incorrectly based on the assumption that he pleaded guilty.

Section 2244(d) of Title 28 provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[7]The correct spelling of this person's name may be "Montson." This opinion will use the "Monltson" spelling generally contained in Tate's petition.

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

On direct appeal, the Illinois Appellate Court's decision was entered on February 20, 1996. Tate had 21 days to either petition for leave to appeal to the Illinois Supreme Court or give notice of his intention to do so. See Ill. Sup. Ct. R. 315(b). Since he did neither within that time period, his direct appeal became final on March 12, 1996. See United States ex rel. Thomas v. Welborn, 2000 WL 1831548 *2 (N.D. Ill. Dec. 13, 2000); United States ex rel. Villazana v. Page, 1999 WL 342384 *2 (N.D. Ill. May 11, 1999).[8] However, the one-year limitation period of

---

[8]In Owens v. Boyd, 235 F.3d 356, 357 (7th Cir. 2000), the court added 35 days as the maximum allowable time to petition for leave to appeal. However, the 35 days only comes into play if an affidavit of intent is filed within 21 days. Since Tate did not file the affidavit of intent, his conviction became final when the 21-day period expired. In any event, whether 21 or 35 days, there is no effect on the issues presently before the court since, as discussed below, the April 24, 1996 effective date of the limitation period and the length of the applicable tolling period are the key measuring dates, not when in March 1996 the direct appeal became final.

§ 2244(d) did not go into effect until April 24, 1996. If not otherwise tolled, the one-year period would be measured from April 24, 1996, not March 12, 1996. Fernandez v. Sternes, 227 F.3d 977, 978 (7th Cir. 2000); Villazana, 1999 WL 342384 at *2. The November 1999 motion to file a late petition for leave to appeal was denied and therefore could not extend the accrual date. See Fernandez, 227 F.3d at 979.[9] As of March and April 1996, Tate's first post-conviction petition was already pending and therefore the one-year period for filing his federal petition was tolled. Instead, the one-year period of § 2244(d)(1)(A) began to run upon the May 7, 1996 affirmance of the denial of the first post-conviction petition.[10] Thereafter, Tate had one year to file a federal habeas corpus petition, that is until May 7, 1997. No federal habeas corpus petition having been filed by that time, the time for seeking federal relief expired on that date unless the time period was further tolled or one of the other subdivisions of § 2244(d)(1) applies.

---

[9]Even if that motion had been granted, at most it would probably only have tolled the time period beginning on the November 29, 1999 filing of the motion, which would already have been too late. See Fernandez, 227 F.3d at 979-81.

[10]Although Tate had a further 21 days to seek leave to appeal to the Illinois Supreme Court, he filed no such petition and therefore his first post-conviction petition had no further tolling effect because it was not pending during that 21-day period. See Gutierrez v. Schomig, 233 F.3d 490, 491-92 (7th Cir. 2000) (tolling does not occur during period in which a petition for certiorari could have been filed, but was not). See also Owens, 235 F.3d at 357.

Tate contends that the 1999 filing of his second post-conviction petition tolled the federal limitation period from the state court affirmance on direct appeal until the second post-conviction petition was finally denied in January 2001 when the Illinois Supreme Court denied leave to appeal.  If correct, then the federal petition was timely filed in April 2001.  Section 2244(d)(2) limits tolling to a "properly filed" application for state post-conviction review.  Citing Tinker v. Hanks, 255 F.3d 444 (7th Cir. 2001), respondent contends the second post-conviction petition had no tolling effect because it was a successive petition which is not permitted under Illinois's post-conviction procedures.  Alternatively, respondent contends the tolling effect of the second post-conviction petition did not begin until it was filed in 1999, which would be too late to aid Tate.

In Artuz v. Bennett, 121 S. Ct. 361 (2000), the Supreme Court held that:

> an application for state postconviction relief is "properly filed" even if there are good defenses to it, the requisite propriety having to do not with the merits of the application but with whether it conforms to purely formal requirements such as "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged and the requisite filing fee," id. at 364 (footnote omitted)--but also "preconditions imposed on particular abusive filers."  The Court illustrated by quoting with pregnant emphases 28 U.S.C. § 2244(b)(3)(A), . . . .

Tinker, 255 F.3d at 445.  See also Rice v. Bowen, 264 F.3d 698,
700 (7th Cir. 2001).  In Artuz, a person convicted in the state
courts of New York had his second state court collateral attack
on his conviction denied on the ground that it raised issues
previously determined on the merits and issues that could have
been raised on direct appeal.  The Supreme Court held that such
"procedural bars" as grounds for dismissal did not prevent the
collateral attack from being properly filed as to its form of
delivery to the court.  Artuz, 121 S. Ct. at 363-65.

Tinker was distinguishable from Artuz and is also
distinguishable from Tate's situation.  Tinker involved a person
convicted in the state courts of Indiana who filed a second state
court post-conviction petition.  Similar to persons convicted in
federal court (see 28 U.S.C. § 2255, 2244) and state prisoners
seeking federal habeas corpus relief (see 28 U.S.C.
§ 2244(b)(3)), Indiana requires state convicts to obtain leave of
an appellate court before filing a successive post-conviction
petition.  Ind. Post-Conviction R. 1(12); Tinker, 255 F.3d
at 446.  Tinker holds that failure to obtain such leave is a
prefiling requirement, the absence of which precludes a
successive post-conviction petition in Indiana from being
properly filed.  Id. at 445-46.

Unlike Indiana, Illinois does not require that a state
prisoner obtain leave of court before filing a successive post-

conviction petition.  See generally 725 ILCS 5/122-1, 122-3.

Instead, successive post-conviction petitions are denied on res

judicata or waiver grounds or considered on the merits in

situations where the claimed error could not have been raised in

earlier proceedings or the petitioner otherwise shows cause and

prejudice.  See People v. Jones, 191 Ill. 2d 194, 730 N.E.2d 26,

28-29 (2000), cert. denied, 121 S. Ct. 885 (2001); People v.

Caballero, 179 Ill. 2d 205, 688 N.E.2d 658, 661 (1997).  It was

on this basis that the trial court denied the second post-

conviction petition and the Illinois Appellate Court affirmed.

Thus, Tate's situation is like that in Artuz, having his petition

denied on grounds of res judicata and waiver.[11]  Tate's situation

certainly does not involve the failure to satisfy a prefiling

requirement as in Tinker.  Tate's successive post-conviction

petition was "properly filed."[12]

---

[11]In United States ex rel. Villatoro v. Briley, 2001 WL
1155281 *3-4 (N.D. Ill. Sept. 28, 2001), the court held that
denial of a successive post-conviction petition on the ground
that it did not meet the exception for filing more than one post-
conviction petition is a dismissal based on a procedural bar and
therefore makes the successive post-conviction petition not
properly filed.  Today's ruling respectfully disagrees, finding
Villatoro to be inconsistent with Artuz, 121 S. Ct. at 365, which
holds that procedural bar defenses such as res judicata and
waiver do not make a state collateral attack not properly filed.

[12]The time for Tate filing a post-conviction petition
would have expired in 1997, three years after his conviction,
unless he alleged facts showing that the delay was not due to his
culpable negligence.  725 ILCS 5/122-1(c).  However, since the
second post-conviction petition was not denied on timeliness
grounds, it cannot be considered that the petition was improperly

While respondent's "properly filed" argument lacks merit, his alternative contention is meritorious. Under § 2244(d)(2), a post-conviction petition tolls the limitation period only while the post-conviction petition is "pending" in the state court. Johnson v. McCaughtry, 265 F.3d 559, 2001 WL 1028055 *2 (7th Cir. Sept. 7, 2001); Gutierrez, 233 F.3d at 492; Fernandez, 227 F.3d at 979-80. Since the second post-conviction petition was not filed until September 1999, it was not pending until then and therefore did not begin tolling the limitation period until September 1999. See Johnson, 265 F.3d at ___, 2001 WL 1028055 at *3. At that point, Tate's § 2244(d)(1)(A) limitation period for filing his federal habeas corpus petition had already expired. Taking into account the appropriate tolling periods under § 2244(d)(2), Tate's federal habeas corpus petition was not filed within § 2244(d)(1)(A)'s one-year limitation period.

Tate still offers other bases for finding his petition to be timely or otherwise cognizable. He contends his federal petition was timely because of equitable estoppel and may also be contending that his federal petition is timely because brought within one year of newly discovered evidence (see 28 U.S.C.

_____

filed because untimely. Rice, 264 F.3d at 700; Johnson v. McCaughtry, 265 F.3d 559, 2001 WL 1028055 *3 (7th Cir. Sept. 7, 2001); Jefferson v. Welborn, 222 F.3d 286, 288 (7th Cir. 2000). In any event, as explained in Rice, 264 F.3d at 700-01, Illinois's not-culpable-negligence exception may have precluded the possibility of finding Tate's second post-conviction petition to be improperly filed because untimely.

§ 2244(d)(1)(D)). Even accepting that his petition was untimely under § 2244(d), Tate contends his claims are still cognizable because respondent was not prejudiced by the delay and because he is actually innocent.

Section 2244(d)(1)(D) provides for a one-year limitation period (plus any applicable tolling period) measured from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Tate makes contentions that can be construed as raising this provision. See Memo. in Support of Habeas Petition at 5; Reply to Respondent's Answer ¶ 15. The only possible newly discovered evidence that may be a basis for invoking this provision is the affidavit of Timothy Monltson, which is dated May 13, 1999 and which relates to Tate's "Issue 6."[13] Monltson states in part in his affidavit:

> On July 13, 1991, I was coming out of my house. I am not sure of the time but I know it was dark outside. I heard gun shots and I observed some guys running. I then was frightened and went back inside my house.
> * * *
> At the end of the month I heard that an individual by the name of Timothy Tate was arrested for the crime which occurred a few houses from mine. The fact of the matter is that I know Timothy Tate from the neighborhood. He was not there at that crime scene nor was he the

---

[13]If the claim accrued on May 13, 1999, it would be timely since the one-year period beginning that date would have been tolled during the pendency of the second post-conviction petition (September 10, 1999 to January 29, 2001).

person doing the shooting.  I do not know who
were the people doing the shooting but I surely
know it was not Timothy Tate.

Tate does not address this issue in his own affidavit
which he has attached to the federal habeas petition.  Monltson's
affidavit does not specifically state when he first communicated
with Tate or an intermediary.  In the habeas petition itself,
Tate alleges that Monltson was noted as a witness in police
reports, but that he does not know if the police reports detailed
his possible testimony.  He further alleges that trial counsel
failed to contact Monltson.  Additionally, Tate alleges:
"Petitioner was able to locate Mr. Monltson through the exercise
of due diligence after petitioner discovered, from reliable
source, that Mr. Monltson had eyewitnessed the shooting. . . .
Mr. Monltson became involved in this case after petitioner
located him and was able to secure an affidavit not until May 13,
1999."  Petition at 27-28.

It is the actual or putative knowledge of the pertinent
facts themselves that starts the clock running under
§ 2244(d)(1)(D).  <u>Owens</u>, 235 F.3d at 359.  Accrual does not await
the collection of evidence supporting the facts, including
possible supporting affidavits.  <u>Flanagan v. Johnson</u>, 154 F.3d
196, 198-99 (5th Cir. 1998).  Tate identifies the date of
Monltson's affidavit, but does not state when he learned the
underlying fact of what Monltson's testimony would be.  Moreover,

Tate conclusorily alleges due diligence, but does not provide any

facts supporting that he exercised due diligence.  Tate has not

adequately alleged or supported that he did not and could not

learn of Monltson's potential testimony until May 13, 1999.  Cf.

Miller v. Marr, 141 F.3d 976, 978 (10th Cir.), cert. denied, 525

U.S. 891 (1998); Neuendorf v. Graves, 110 F. Supp. 2d 1144, 1155

(N.D. Iowa 2000).  An insufficient basis exists for concluding

that Issue 6 is timely because brought within a year of when the

pertinent facts were and could have been discovered.[14]

Tate also contends the limitation period should be

equitably tolled because he has been proceeding pro se, has

---

[14]Even if this claim were found to be timely, it lacks
merit.  Monltson's affidavit is contradictory, or at least
ambiguous.  He states that he heard shots and saw persons
running, not that he witnessed the shooting itself, yet he also
states that he knows Tate was not the one shooting.  Based on the
affidavit, Monltson could only testify that he did not see Tate
at the shooting; he cannot conclusively rule out Tate's
involvement.  Another witness did testify at trial that she did
not see Tate present and that she saw someone else chasing the
victim.  See Petition at 22 (citing testimony of Antonia Jacobs
at I104-06, I119).  See also Tate I, at 9.  Also, the affidavit
of Sellers, on which Tate places heavy reliance, indicates that
Sellers did the actual shooting, but also implicates Tate as an
accomplice.  This affidavit is dated November 1, 1993.  A
statement of Sellers dated August 11, 1993 was discussed or
presented at trial.  The August 1993 statement retracts a prior
statement implicating Tate as the triggerman.  At trial, Sellers
testified that he provided the August 1993 statement under gang
pressure and that the facts contained therein were false.  See
Tate I, at 3.  But even if the November 1993 affidavit of Sellers
were accepted as true, Tate would still be guilty of the murder
on an accountability theory.  Cf. Tate II, at 3.  There is no
reasonable probability that trial counsel interviewing Monltson
would have affected the outcome of the trial.

limited legal knowledge and abilities, has limited access to legal materials because of his incarceration, and did not learn of the one-year limitation period until shortly before he filed his federal habeas corpus petition. Section 2244(d)'s limitation period is not jurisdictional and may be subject to equitable tolling in limited circumstances. See Taliani v. Chrans, 189 F.3d 597, 598 (7th Cir. 1999); Owens, 235 F.3d at 360; Johnson, 265 F.3d at ___, 2001 WL 1028055 at *4. However, since § 2244(d) contains its own tolling provisions, any judicially created tolling doctrines must be narrow and consistent with those already incorporated in § 2244(d). Equitable tolling "may be available when some impediment of a variety not covered in § 2244(d)(1) prevents the filing of a collateral attack." Owens, 235 F.3d at 360. Accord Johnson, 265 F.3d at ___, 2001 WL 1028055 at *4. As has been noted by the Seventh Circuit in the context of equitable tolling, "habeas relief, by definition, is almost always sought by an incarcerated petitioner." Johnson, 265 F.3d at ___, 20001 WL 1028055 at *5. Proceeding pro se with limited legal skills and limited access to legal materials is not an exceptional circumstance for a habeas petitioner. Absent extraordinary circumstances, such conditions will not be a basis for equitably tolling § 2244(d)'s limitation period. See id. Tate does not allege such extraordinary circumstances. Equitable tolling will not be applied.

Tate contends that any delay should be excused because it did not prejudice respondent in his ability to respond to the habeas petition.  See Reply to Respondent's Answer ¶ 25.  In support of this contention, Tate cites Rule 9(a) of the Rules Governing Section 2254 Cases.  That Rule, however, predated § 2244(d) and provides a laches basis for dismissing habeas petitions independent of the statute of limitations provision of § 2244(d).  It does not impose a prejudice requirement for petitions violating § 2244(d).  Prejudice to the respondent is not a factor to be shown in order to invoke the time limits of § 2244(d).  Wyzykowski v. Department of Corrections, 226 F.3d 1213, 1216 (11th Cir. 2000).  Section 2244(d) bars Tate's petition regardless of any lack of prejudice to respondent as the result of delay.

Tate's last contention is that his late filing should be excused because he is actually innocent of the charge against him.  Just as actual innocence is a fundamental miscarriage of justice that may excuse a procedural default, some courts have indicated that it will also excuse a late filing beyond the § 2244(d) limitation period.  See Holloway v. Jones, ___ F. Supp. 2d ___, 2001 WL 1149352 *3-4 (E.D. Mich. Sept. 28, 2001) (collecting cases); United States ex rel. Thomas v. Welborn, 2000 WL 1831548 (N.D. Ill. Dec. 13, 2000) (same).  At least one circuit court has indicated actual innocence will not be a basis

for equitably tolling § 2244(d)'s limitation period because a prisoner claiming actual innocence is not "rare and exceptional." See Felder v. Johnson, 204 F.3d 168, 171 (5th Cir.), cert. denied, 531 U.S. 1035 (2000). Many courts have simply assumed, without deciding, that actual innocence can apply to excuse the delay because they go on to find that actual innocence is not sufficiently alleged or shown. See Holloway, supra (collecting cases); Thomas, supra (same). It is this last approach that will be taken here.

In order to demonstrate a fundamental miscarriage of justice, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 495-96 (1986). To satisfy this standard, a petitioner must not only "support his allegations of constitutional error with new reliable evidence-- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial," but also "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 324, 327 (1995). Accord United States ex rel. Weston v. Clark, 101 F. Supp. 2d 685, 689 (N.D. Ill. 2000); United States ex rel. Lucas v. Welborn, 89 F. Supp. 2d 976, 982 (N.D. Ill. 1999).

Tate does not satisfy this standard. The only new evidence that Tate relies upon is Monltson's possible testimony as related in Monltson's affidavit. As previously discussed, the affidavit is ambiguous and would only show that Monltson did not see (or was not able to see) Tate running away from the shooting. At least one other person already testified to that effect and Monltson would not be able to conclusively testify that Tate was not present. Sellers' possible recantation is not new evidence and was already raised at the trial.[15] There was substantial evidence of Tate's guilt presented at trial and, except for the conclusory statement in Tate's present affidavit that he is "one-hundred percent innocent of the crime," Tate's present contentions tend to raise the question of whether he was the one that actually hit the victim with a fired shot, not whether he would still be guilty on an accountability theory. Tate does not point to new, reliable evidence that would make it more likely than not that no juror would find him guilty. Tate does not satisfy any possible miscarriage of justice exception to the time limitations of § 2244(d).

For the foregoing reasons, Tate's petition will be denied as untimely.

---

[15]Tate also alleges three additional witnesses who did not testify at trial could testify that Sellers recanted to them.

IT IS THEREFORE ORDERED that petitioner's motion for leave to file a reply to respondent's reply is granted. Respondent's motion to dismiss [15-1] is granted. The Clerk of the Court is directed to enter judgment in favor of respondent Mark Pierson and against petitioner Timothy Tate denying the petition for writ of habeas corpus. If petitioner wishes to appeal this order, he must file a Notice of Appeal to the United States Court of Appeals for the Seventh Circuit with the Clerk of the Court, United States District Court for the Northern District of Illinois, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604, within thirty (30) days of the entry of the judgment in this case. Any notice of appeal should also be accompanied by a request for a certificate of appealability, including a statement as to why a certificate should issue. See 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

ENTER:

William T. (Sort

UNITED STATES DISTRICT JUDGE

DATED: OCTOBER 29 , 2001